UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DYLAN SINN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No. 1:15-cv-1394-WTL-DML ) |
| BRUCE LEMMON, et al., | ) ) |
| Defendants. | ) |

### ENTRY ON STATE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

This cause is before the Court on the motion for judgment on the pleadings filed by the State Defendants: Bruce Lemmon; Jackie Helderman, II; Stanley Knight; Lieutenant Wiggins; Hartsock[1]; Paul Hoskins; Beau Michael Judd; John Murry; C. Penfold; Tim Phegley; Ty Robbins; Sgt. R. Myers; Scott Rogers; Quentin Storm; Linda Vannatta; Chris Williams; and D. Wilson.[2] Dkt. No. 20. The motion is fully briefed, and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** the motion for the reasons set forth below.[3]

### I.  STANDARD

In reviewing a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the Court applies the same standard that is applied when reviewing a motion to dismiss pursuant to Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp.*, 499 F.3d 629, 633 (7th Cir.

---

[1] Also referred to as Hartzell.
[2] The names of some Defendants have been changed from those in the case caption to reflect what appears to be the Defendants' full or correct names as indicated elsewhere in documents that have been filed. In several cases the Court was unable to determine the actual names of the Defendants.
[3] Defendant Brush has not joined in the instant motion.

2007). The Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. National Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). For a claim to survive the motion for judgment on the pleadings, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (omission in original). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Agnew*, 638 F.3d at 334 (citations omitted). A complaint's factual allegations are plausible if they "raise the right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## II.     **BACKGROUND**

The Plaintiff, Dylan Sinn, has filed a lawsuit against several employees of the Indiana Department of Correction ("IDOC"). For purposes of this motion, the Court accepts the following well-pleaded allegations as true.

Sinn was in the custody of the IDOC from June 2011 until he was released on February 6, 2015. In June 2013, Sinn was transferred from Pendleton Correctional Facility to Putnamville Correctional Facility. While in Putnamville, he was housed in various dormitories, including 11 South and 18 South. Each dormitory houses approximately 150 inmates and has one correctional officer to monitor activities after 4 p.m.

On April 24, 2014, Sinn was robbed of personal property and assaulted by several black inmates. Sinn believes that the people who assaulted him are members of the Vice Lords, a criminal prison gang. One correctional officer was assigned to 11 South at the time Sinn was assaulted. The officer sounded an alert, but no assistance arrived until several minutes later. Sergeant Scott Rogers and C.O. Paul Hoskins responded with additional officers. They moved

2

Sinn to 18 South but did not segregate the attackers. Rogers and Hoskins viewed the video recording and considered what to do before taking Sinn to 18 South. Sinn heard the correctional officers who viewed the video state that it was too close to shift change to deal with all that, which he took to mean that because there were several black inmates who were seen on the video and could be identified, the officers did not want to expend additional time and effort before their shift ended to address the incident.

During the first attack, Sinn was beaten up but not seriously injured. Two other white inmates were also attacked, and they were also moved. Despite being moved, the other two inmates were attacked again by black gang members a few days later. Sinn alerted the administration and unit staff that he was afraid for his safety.[4]

On April 30, 2014, Sinn was again assaulted by black inmates. He believes that the people who attacked him were members of the Vice Lords. They forced him into the shower area and severely beat him. Sinn's leg was broken in two places, and he also suffered a fractured jaw, a broken nose, and several contusions to his face and body. Sinn was taken by ambulance to a hospital and then transferred to a different hospital, where he underwent two surgeries. During the April 30 attack, only one guard was assigned to Dorm 18 South. This attack was also video recorded.

Sinn alleges that there is a systemic problem of understaffing at the DOC facility in Plainfield, and this understaffing is due to a statewide policy of understaffing prisons to save money. Sinn alleges that gangs, especially "black gangs, act with little consequence to steal,

---

[4] Specific information regarding what Sinn alleges he told individual staff members and what he alleges regarding the investigation of the attack is included in the relevant sections below.

assault, subjugate, and dominate individual inmates—most frequently white inmates." Dkt. No. 1-2 at 25.

### III. DISCUSSION

Sinn's Section 1983 claim is based on his assertion that the Defendants violated his rights under the Eighth, Fourth, and Fourteenth Amendments by imposing cruel and unusual punishment.[5] The Complaint indicates that the following Defendants are sued in both their official and individual capacities: Lemmon, Knight, Phegley, Hartsock, Vannatta, and D. Wilson. The complaint indicates that the following Defendants are sued only in their individual capacities: D. Wilson, Quentin Storm, Chris Williams, Jackie Helderman II, John Brush, John Murry, Sgt. Scott Rogers, Paul Hoskins, Beau Michael Judd, R. Myers, Ty Robbins, Lt. Wiggins, and C. Penfold.

#### A. Sinn's Claims Against Defendants in Their Official Capacities

Sinn seeks both monetary damages and a declaratory judgment. The Eleventh Amendment generally precludes a citizen from suing a state or one of its agencies or departments for money damages in federal court. *Wynn v. Southward,* 251 F.3d 588, 592 (7th Cir. 2001); *Moore v. Indiana,* 999 F.2d 1125, 1128 (7th Cir. 1993) (quoting *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984)). Moreover, "[t]his bar remains in effect when State

---

[5] The Court is perplexed by the subsection of Sinn's Response entitled "Typical Federal Jury Instructions." Contrary to Sinn's hope that the "standard Federal jury instructions . . . should aid this court in understanding that the plaintiffs are likely to succeed on liability against the remaining defendant," Dkt. No. 32 at 6, this series of purported statements of law with only a citation to a single case does not aid the Court in any way. Further, the language does not appear to have been taken from the Federal Civil Jury Instructions of the Seventh Circuit. Rather, though the source is not credited, the material appears to be taken from a treatise, *Police Misconduct: Law & Litigation* § 12:37. Of actual aid to the Court would be a cogent, well-organized argument properly supported by legal authority that actually responded to the arguments raised by the Defendants.

officials are sued for damages in their official capacity . . . [as] a judgment against a public servant in his official capacity imposes liability on the entity that he represents." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (quotations and citations omitted).

IDOC is a state agency. *Wynn,* 251 F.3d at 592. There are three exceptions to Eleventh Amendment immunity: (1) suits against state officials seeking prospective equitable relief for ongoing violations of federal law are not barred by the Eleventh Amendment; (2) individuals may sue a state directly if Congress has abrogated the state's immunity from suit; and (3) individuals may sue the state if the state waived its sovereign immunity and consented to suit in federal court. *MCI Telecommunications Corp. v. Ill. Commerce Comm'n,* 183 F.3d 558, 563 (7th Cir. 1999) (citing *Marie O. v. Edgar,* 131 F.3d 610 (7th Cir. 1997)).[6]

Indiana has not consented to this suit. Nor did Congress abrogate the State's immunity through the enactment of Section 1983. *See Joseph v. Bd. of Regents of Univ. of Wis. Sys.,* 432 F.3d 746, 748 (7th Cir. 2005). As such, the Eleventh Amendment bars Sinn's Section 1983 claim for money damages against the Defendants in their official capacity. *See Wynn,* 251 F.3d at 592 (finding that IDOC is a state agency and thus is immune from suit in federal court for money damages).

Sinn also seeks a declaratory judgment against Defendants Lemmon, Knight, Phegley, Hartsock and Vannatta, in their official capacities,[7] alleging that "the current practice of

---

[6] The Plaintiff's brief contains a subsection entitled "Monell Claims Directed to Commissioner Bruce Lemmon and Superintendent Knight." Dkt. No. 32 at 8. *Monell v. Department of Social Services*, 436 U.S. 658 (1978) holds that local governments are persons subject to suit under Section 1983. Importantly, *Monell* does not abrogate a state's immunity under the Eleventh Amendment. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63-64 (1989). As such, it is inapposite here.

[7] Sinn indicates that Intern Program Coordinator D. Wilson is sued in his official capacity (Dkt. No. 1-2 at 18) but also indicates that D. Wilson is sued only in his individual capacity (Dkt.

5

understaffing the prison facility at Plainfield" is "unconstitutional and/or negligent, causing or leading to the inevitable and foreseeable suffering and injury of inmates from other inmate attacks." The Defendants argue that Sinn's request is moot because he is no longer incarcerated. The Court agrees.

A plaintiff bringing a claim under Section 1983 has standing to seek injunctive relief "only if he has a personal stake in the outcome of the litigation." *Stewart v. McGinnis*, 5 F.3d 1031, 1037 (7th Cir. 1993) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)); *see also Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000). Sinn has not established the requisite personal stake in the outcome of this litigation because he is no longer incarcerated within the IDOC system. Nor does Sinn provide any indication that he will be returned to IDOC's custody at any time in the near future. While Sinn claims that "[i]t would be such an injustice for Mr. Sinn to have no equitable cause of action in this particular case because of mootness," (Dkt. No. 32 at 11), Sinn would receive absolutely no benefit from any injunctive relief if any were in fact granted. He is no longer in prison, and, as such, he is under no threat of harm from any sort of official conduct there. Accordingly, Sinn lacks standing to pursue equitable relief against IDOC under Section 1983. *Cf. Stewart*, 5 F.3d at 1037-38 (inmate not entitled to equitable relief where he was no longer housed in prison where alleged violations had occurred). The Court thus **GRANTS** the Defendants' motion as to the claims against all of the Defendants in their official capacities.

---

No. 1-2 at 19). Despite this inconsistency and the fact that Wilson apparently has not been served, the Court will address the claims against him.

### B. Claims Sinn Agrees Should Be Dismissed

Sinn concedes that his claims against Defendants Judd, Myers, Williams, and Helderman should be dismissed. (Dkt. No. 32 at 3-4). Accordingly, the Court **GRANTS** the Defendants' motion as to these claims.

### C. Remaining Defendants

#### *1. Defendants Vannatta, Wilson, Penfold, Wiggins, and Murry*

With respect to Defendants Vannatta and Wilson, Sinn alleges the following:

> 38. Mr. Sinn's grievance form was eventually reviewed on appeal. The Offender Grievance Response Report from defendant D. Wilson and L.A. VanNatta indicated in the final level of review, [sic] that there was insufficient information and that the grievance had not been filed within the timeframe. This decision was issued on October 21, 2014.

In his Response to the instant motion, Sinn adds that Vannatta and Wilson "concluded that the grievance was filed too late." Dkt. No. 32 at 2. Sinn's affidavit alleges the following:

> 16. As clear as the English language can be (Exhibit J) D. Wilson, program coordinator at COA stated: "Grievance denied. Injuries sustained were a result if (sic) of Offender Sinn's poor decision making. If Sinn was not involved in the fight, he would not have broken his leg while Grievance Officer Storm said Offender Sinn slipped in water.
>
> 17. The final review was made by Defendant L.A. Vannetta, and he ignored the uncontroverted facts depicted in the video. I was attacked and I never threw a punch because I had been sucker punched with such force my leg snapped in two places.

Dkt. No. 32-4 at 3.

With respect to Defendants Penfold and Wiggins, Sinn alleges the following:

> 39. While Mr. Sinn was recuperating at the medical unit art [sic] IYC, he attempted to file another grievance against the FARM. However, C. Penfold, a grievance specialist, and Lt. Wiggins would not accept it, and Lt. Wiggins threw it in the trash.

Dkt. No. 1-2 at 23.

With regard to Defendant Murry, Sinn alleges the following: "Mr. Sinn learned that John Murry, a casework manager, attempted to restrict his access to the law library when he was doing research on his grievance and tort claim notice." Dkt. No. 1-2 at 9.

Sinn fails to assert any plausible facts that demonstrate liability on the part of these Defendants. A failure by a prison official to properly investigate an attack or respond to a prisoner's grievance—on its own—does not violate the United States Constitution. *See, e.g.*, *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."); *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."). Sinn does not assert that any of these Defendants caused or participated in the underlying conduct.

Further, to the extent that Sinn may be attempting to raise a denial-of-access claim against any of these Defendants, he has failed to assert facts to support that claim. Specifically, Sinn's complaint fails to identify any injury that he has suffered from the alleged interference. "[W]hen a plaintiff alleges a denial of the right to access-to-courts, he must usually plead specific prejudice to state a claim, such as by alleging that he missed court deadlines, failed to make timely filing, or that legitimate claims were dismissed because of the denial of reasonable access to legal resources." *Ortloff v. United States,* 335 F.3d 652, 656 (7th Cir. 2003). Sinn has not alleged any such prejudice. As such, the Court **GRANTS** the Defendants' motion as to his claims against Defendants Vannatta, Wilson, Penfold, Wiggins, and Murry.

### 2. *Defendants Robbins, Phegley, Hartsock, and Storm*

Sinn alleges the following with respect to Defendant Robbins: "On July 10, 2014, Mr. Sinn was approved for protective custody at Plainfield by Classification Supervisor Ty Robbins."

8

Dkt. No. 1-2 at 10. Sinn alleges the following with respect to Defendant Phegley: "Even though Defendant Phegley claims to have referred the matter to the Putnam County Prosecutor, no action was taken against the assailants; no charges were filed." Dkt. No. 1-2 at 8. Sinn identifies Hartsock as a defendant "co-conspirator of a meaningless Indiana Department of Correction grievance system."[8] Dkt. No. 1-2 at 4. Sinn alleges the following with respect to Storm: "One investigative report, compiled by Quentin Storm, claimed in Case Log # 84037, that Mr. Sinn 'slipped in water'. Mr. Storm also stated, gratuitously, that Sinn was prone to trouble and had a write up in New Castle Facility. All of this information was invented." Dkt. No. 1-2 at 9.

The facts as pled regarding Defendants Robbins, Phegley, Hartsock, and Storm fail to state a claim upon which relief may be granted. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Sinn alleges that Robbins approved him for protective custody but alleges no other facts regarding Robbins. Likewise, he alleges that Phegley claimed to refer the matter for prosecution. These alleged facts do not support a claim of failure to protect. To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quotation and citation omitted)*; see also Twombly,* 550 U.S. 544, 562 (2007) (quotations and citations omitted) (explaining that a complaint is sufficient only to the extent that it "contain[s] either direct or inferential allegations respecting all

---

[8] While Sinn uses the word co-conspirators in describing the Defendants and alleges that "the willful indifference and the collusive conduct constitutes a conspiracy to cover up a systemic security problem within the Indiana Department of Corrections prison facilities," Dkt. No. 1-2 at 11, he has not adequately defined a conspiracy so as to satisfy the *Twombly/Iqbal* pleading standard.

9

the material elements necessary to sustain recovery under some viable legal theory"). Here, Sinn fails to tie the facts alleged to any viable legal theory.

With respect to Hartsock, the Complaint appears to allege only a conspiracy claim, but it is devoid of any facts to support such a claim. As such, the Court **GRANTS** the Defendants' motion as to Sinn's claims against Defendants Robbins, Phegley, Hartsock, and Storm.

### 3. *Defendants Lemmon and Knight*

With respect to Defendant Lemmon, Sinn alleges the following: "The Defendant Commissioner, Bruce Lemmon, has authority of the Facility and is the final authority for all policies of the IDOC." Dkt. No. 1-2 at 5. He adds that "the overall procedure [of the grievance process] is the responsibility of Bruce Lemmon." Dkt. No. 32 at 2. He alleges that "the grievance process in his particular case was deliberately intended to be an unreasonable burden." Dkt. No. 32 at 2. Sinn's affidavit asserts, "Commissioner Lemmon encourages the Superintendents of the 80 DOC institutions to keep man-hours down and costs below budget." Dkt. No. 32-4 at 1. It further alleges:

> 18. Because of policies and decisions, which the commissioner made and his subordinates facilitated, the FARM was dangerously understaffed in April 2014.
> 19. Because of policies and decisions which the commissioner made and his subordinates facilitated, gangs such as the Vice Lords attacked white inmates without any meaningful consequence and when I alerted staff that further attacks would happen targeting me after the April 24, 2014 attack in which I was robbed, everyone ignored my plea for protection.

Dkt. No. 32-4 at 3.

With respect to Defendant Knight, Sinn alleges the following:

Superintendent Stanley Knight was the state official responsible for the safe detention of inmates at the Indiana Putnamville Correctional Facility (commonly known as "the Farm"). He is responsible for enforcing the laws and the constitution of the State of Indiana and the U.S. Constitution. He is responsible for insuring an honest and meaningful prison grievance process by which inmates

> make complaints and seek redress. Mr. Knight is ultimately responsible for hiring correctional officers and staff and approving their assignments and their discipline.

Dkt. No. 1-2 at 5. He further alleges the following: "The attack was investigated by Darrin Channey, . . . who referred the matter directly to Stanley Knight." *Id.* at 8. Sinn's affidavit asserts that "Superintendent Knight, during all relevant times, chose to cut man hours and keep the FARM understaffed according to comparisons with the ACA report which the defendants have yet to provide . . . ." Dkt. No. 32-4 at 1.

Any right to a grievance procedure is a procedural right, not a substantive one. *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996). As such, a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause. *Id.* Further, Sinn's use of the judicial process demonstrates that the Defendants did not infringe his First Amendment right to petition the government for a redress of grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Nor has Sinn alleged that there "was absolutely no opportunity for prisoners to express their safety concerns to [prison] officials," *Grieveson*, 538 F.3d at 772. Further, Sinn has not alleged that the grievance procedure—either the procedure itself or how it was implemented—caused his injuries. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("At any rate, we fail to see how the report-filing policy or practice was likely to lead to [the inmate's] death."). Accordingly, the Court **GRANTS** the Defendants' motion as to the claims related to the grievance procedure against Lemmon and Knight.

While it remains to be seen whether Sinn will have evidence to support the Eighth Amendment claims against Lemmon and Knight, he has satisfied the *Twombly/Iqbal* standard as applicable to this type of claim. As such, the Court **DENIES** the Defendants' motion as to the Eighth Amendment failure-to-protect claims against Defendants Lemmon and Knight.

### 4. *Defendants Rogers and Hoskins*

Defendants Rogers and Hoskins have raised the affirmative defense of qualified immunity. Sinn argues absolutely nothing in response to their argument. Once qualified immunity is raised as an affirmative defense, "it becomes the plaintiff's burden to defeat it." *Purvis v. Oest*, 614 F.3d 713, 717 (7th Cir. 2010) (citation omitted). Inasmuch as Sinn has made no attempt to do so, he presumably concedes that they are entitled to qualified immunity. Accordingly, the Court **GRANTS** the Defendants' motion as to Sinn's claims against Defendants Rogers and Hoskins.

### IV. <u>CONCLUSION</u>

The Court **GRANTS IN PART AND DENIES IN PART** the Defendants' Motion for Judgment on the Pleadings. Claims related to failure to protect against Defendants Lemmon and Knight in their individual capacities may proceed. Additionally, the Defendants did not move for judgment on behalf of Defendant Brush, so the claims asserted against him may also proceed. Judgment on the pleadings is **GRANTED** as to all other claims against all other Defendants.

**SO ORDERED: 1/24/17**

_____
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.