**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DYLAN SINN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:15-cv-01394-TWP-DML |
| JOHN BRUSH, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY ON PENDING MOTIONS *IN LIMINE***

This matter is set for jury trial on **Tuesday, October 15, 2019,** on Plaintiff Dylan Sinn's claim for deliberate indifference in violation of the Eighth Amendment to the United States Constitution. Before the Court are the parties' Motions *in Limine*. Plaintiff Dylan Sinn ("Sinn") moves to exclude all evidence of his criminal record and current incarceration. (Filing No. 133.) Defendant John Brush ("Brush") seeks an order *in limine* on fifteen different matters during the trial. (Filing No. 145; Filing No. 146.) For the following reasons, both Motions *in Limine* are **granted in part and denied in part**.

### I. LEGAL STANDARD

This Court has the power to exclude evidence *in limine* only when evidence is clearly inadmissible on all potential grounds. *Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4, 83 L.Ed.2d 443 (1984) (federal district courts have authority to make *in limine* rulings pursuant to their authority to manage trials). *See Hawthorne Partners v. AT&T Technologies, Inc.* 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). Unless evidence meets this exacting standard, evidentiary rulings must be deferred until trial so questions of foundation, relevancy, and prejudice may be resolved in context. *Id.* at 1400-01. Moreover, denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion is admissible; rather, it only means

that, at the pretrial stage, the court is unable to determine whether the evidence should be excluded. *Id.* at 1401.

## II. DISCUSSION

A. **Sinn's Motion *in Limine* (Filing No. 133)**

Federal Rule of Evidence 609 allows the admission of evidence of prior criminal convictions when used to impeach a witness, but different standards apply depending on whether the prior conviction is more or less than ten years old. Rule 609 states that when attacking a witness's truthfulness, "evidence of a criminal conviction . . . must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant." Fed. R. Evid. 609(a)(1)(B). But:

> [I]f more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later [then the] [e]vidence of the conviction is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Fed. R. Evid. 609(b). Within the ten-year lookback period, the conviction's probative value must outweigh the prejudicial effect. And beyond ten years, the conviction's probative value must *substantially* outweigh the prejudicial effect. A limiting instruction which tells the jury that the prior convictions may only be used in determining the credibility of the defendant reduces the prejudicial effect of admission. *United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004).

When he filed his Motion, Sinn was incarcerated in the Vigo County Jail after being charged but not convicted of several offenses. (Filing No. 133 at 1.) He has since been convicted on June 26, 2019 of Auto Theft, a level 6 felony in Case No. 84D05-1803-F6-00687 and sentenced

2

on that count to one year, consecutive to another matter, for a total sentence of two years.[1] Sinn received credit for time already served and was released from custody.

Sinn argues that evidence of his incarceration and evidence of convictions to misdemeanor offenses and offenses that are more than 10 years old is irrelevant to his civil suit and should be excluded at trial. *Id.* at 2. He also argues that evidence of these convictions and pleas would be prejudicial if admitted. *Id*. With respect to his convictions of crimes within the last 10 years, Sinn argues they should also be excluded. *Id.* at 2-3. His 2016 felony conviction for criminal confinement resulted in his incarceration at Putnamville Correctional Facility, where he suffered the injuries that have led to this case. *Id.* Sinn argues that "[w]hy he was incarcerated and whether he had a criminal record has no bearing upon the duties owed to Plaintiff by Defendant Brush, and whether Defendant Brush violated such duties, resulting in Plaintiff's injuries. Evidence of Plaintiff's criminal record would serve only the purpose of unfairly prejudicing the jury against him." *Id.* at 3.

Brush responds that he has no intention of offering evidence regarding Sinn's incarceration or pending charges, any misdemeanors Sinn has been convicted of or pled guilty to, or any crimes older than 10 years Sinn has been convicted of or pled guilty to. (Filing No. 139 at 1-2.) Thus, Sinn's Motion as to those categories of evidence is **granted**.

Brush, however, seeks to present evidence of Sinn's 2011 convictions for Class D felony possession of marijuana and Class D felony maintaining a common nuisance in cause number 84D03-1103-FD-00830 and his 2016 conviction of Level 6 felony criminal confinement as well

---

[1] At the final pretrial conference, Brush's counsel noted a change in Sinn's criminal history and provided evidence that Sinn was convicted of Auto Theft, a level 6 Felony on June 26, 2019 (Case No. 84D05-1803-F6-00687), as well as Resisting Law Enforcement, Operating a Vehicle while intoxicated and being a Habitual Vehicular Substance Offender (Case no. 84D05-1704-F6-01184).

as the June 2019 conviction of Level 6 felony auto theft. Brush argues that because these convictions were punishable by imprisonment of more than one year, they "must be admitted, subject to Rule 403, in a civil case." Fed. R. Evid. 609(a)(1)(A).

The Federal Rules of Evidence allow admission of felonies less than 10 years old if they are punishable by death or more than one year of imprisonment. The Seventh Circuit has explained that "a person who has committed a serious crime is more likely than a law-abiding person to lie on the stand even if the case in which he is testifying has nothing to do with that crime." *Schmude v. Tricam Indus., Inc.*, 556 F.3d 624, 627 (7th Cir. 2009). It has outlined a five-factor test to

> guide the district court in the exercise of its discretion in determining whether the probative value of a conviction outweighs its prejudicial effect: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.

*U.S. v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004). Factors (3) and (4) are irrelevant to this civil proceeding, but the Court will evaluate Sinn's prior convictions under factors (1) the impeachment value, (2) the time of the conviction, and (5) the credibility issue.

The impeachment value of Sinn's prior convictions of drug possession, maintaining a common nuisance, and criminal confinement do not speak to truthfulness or credibility, and such evidence would only inflame the jury. *See Best v. Ind. Dep't of Corr.*, 2019 WL 3500938 at *1 (S.D. Ind. Aug. 1, 2019). The facts of this case will reveal to the jury that Sinn was convicted of a crime serious enough to be incarcerated—revealing the number and the names of the crimes he has been convicted of adds no probative value. Sinn's convictions are eight and three years old, and his credibility will be a central issue in this case. With the exception of the recent auto theft, the time and credibility value of Sinn's convictions within the past 10 years is not enough to persuade the Court that naming and numbering them would have probative value or speak to his

truthfulness or credibility on the stand. The jury will know Sinn was incarcerated because to carry his burden of proof at trial he must prove that he was attacked by other inmates while incarcerated at the Indiana Department of Correction ("IDOC").

As noted above, the one exception is Sinn's recent felony conviction for auto theft. The Court finds that this conviction for a crime of dishonesty would be relevant and admissible for impeachment under both Fed. R. Evid. 609 and 403. The Court finds the probative value of this evidence substantially outweighs any undue prejudice and a limiting instruction will be given. Thus, Sinn's Motion *in Limine* is **granted in part and denied in part**.

**B.**     **Brush's Motion *in Limine* ([Filing No. 145](#))**

Brush asks the Court to exclude evidence of the following fifteen categories: 1) employee disciplinary actions of Brush or other IDOC employees; 2) dismissed and denied claims in this suit against other defendants, including the claim that the facility was systematically understaffed; 3) expert testimony on dismissed claims and the ultimate issue; 4) other lawsuits involving Brush, the IDOC, and/or the State of Indiana; 5) IDOC policies and procedures; 6) settlement negotiations; 7) indemnification of the defendant; 8) defense lawyers work for the State of Indiana or Attorney General's Office; 9) a "Golden Rule" argument to jurors that asks or implies a suggestion to put themselves in Plaintiff's position or to consider events from the perspective of Plaintiff or an inmate; 10) evidence of attorney's fees; 11) the Seventh Circuit decision; 12) evidence regarding diagnosis or causation other than subjective symptoms; 13) any suggestion of spoliation of video footage from the Putnamville Correctional Facility on April 24, 2014; 14) Sinn's subsequent placement in protective custody or the modification of his sentence; and 15) video of the April 30, 2014 incident being passed around for entertainment by other correctional officers. ([Filing No. 146](#).)

5

Sinn does not contest or does not intend to offer evidence relating to 4) other lawsuits involving Brush, the IDOC, and/or the State of Indiana issues; 6) settlement negotiations; 7) indemnification of the defendant; 9) a "Golden Rule" argument to jurors that asks or implies a suggestion to put themselves in Plaintiff's position or to consider events from the perspective of Plaintiff or an inmate; 10) evidence of attorney's fees; 11) the Seventh Circuit decision; or 12) evidence regarding diagnosis or causation other than subjective symptoms, unless offered through the testimony of a qualified expert, (Filing No. 151). Accordingly, Brush's Motion *in Limine* is **granted** as to these issues.

In issue 1, Brush asks the Court to exclude "any argument, questions, testimony, or evidence regarding prior workplace discipline (including factual events and allegations that resulted in discipline), of Brush or any current or former Department of Correction employee testifying on behalf of the Defendant." (Filing No. 146 at 1.) Brush argues this evidence would be irrelevant and would be evidence or Brush's prior bad acts, and thus is barred by Federal Rules of Evidence 401, 404(b), and 608(b). *Id.* at 2. Sinn responds that this evidence, "depending on the nature of and reason for the disciplinary action, could be relevant to Brush's knowledge of the risk of harm to Sinn." The Court is not aware of Brush's disciplinary history. It cannot say in the abstract whether any workplace discipline Brush may have undergone violates these Rules of Evidence. Therefore, the Motion *in Limine* is **denied** as to issue 1. The Court will consider instances of Brush's workplace discipline, if any, as they may arise at trial.

Issues 2 and 3 involve the same question: whether Sinn can present evidence of understaffing and other systemic problems at Putnamville Correctional Facility. These systemic issues were originally a large part of his lawsuit against 18 prison officials. But this Court and the Court of Appeals for the Seventh Circuit have disposed of every claim against every defendant

except Sinn's Eighth Amendment failure to protect claim against Brush, leaving the parties to dispute whether these systemic problems are still relevant to this litigation. Brush argues they are not, as "Brush was a unit team manager at the time [of the attacks] and he has nothing to do with staffing at the prison." (Filing No. 146 at 3.) Sinn responds that "Brush was well-aware of understaffing, lack of monitoring, gang violence, and other systemic problems, which necessarily and as a matter of law, should have caused him to take Plaintiff Sinn's complaints seriously and provide appropriate protection." (Filing No. 151 at 2.)

The Court agrees with Sinn in part. Sinn cannot claim that Brush was the cause of these systemic issues at Putnamville Correctional Facility, and he cannot present evidence of dismissed and denied claims. However, he can offer evidence that gang violence and understaffing problems existed, and that Brush was aware of them. This evidence increases the likelihood that Brush was aware of a strong likelihood that Sinn would be seriously harmed as the result of an assault, an element of Sinn's failure to protect claim. Therefore, the Court **grants in part and denies in part** the Motion *in Limine* as to issues 2 and 3.

In issue 5, Brush asks the Court to exclude "any argument, questions, testimony, or evidence regarding [IDOC] policies and procedures to suggest he violated such policies." (Filing No. 146 at 9.) Brush contends that allowing "Sinn to present evidence or suggest to the jury that Brush may have breached some obligation he had to his employer through an alleged rule violation would be confusing to the jury and unfairly prejudicial to Brush." *Id.* Sinn responds that he intends to introduce a department policy on gangs and preventing gang violence that Brush should have known about. The Court agrees that this particular policy is relevant to Brush's awareness of the risks posed by gangs at Putnamville Correctional Facility, a central issue of this case. (Filing No. 151 at 5.) Sinn has not indicated that he intends to offer any other policies and the Court does not

believe the introduction of this particular policy would mislead the jury. Therefore, the Motion *in Limine* is **denied** as to issue 5, as it relates to the IDOC gang policy.

In issue 8, Brush asks the Court to bar "Sinn and his counsel from referring to Defendant's attorneys as 'State lawyers,' or 'the State' or 'Deputy Attorneys General,'" believing such references would "serve no purpose other than to improperly suggest to the jury that the State of Indiana, not the Defendant, will pay any judgment in this case." ([Filing No. 146 at 12](#).) Sinn responds that "[s]tandard introductions include reference to where the attorneys are employed," and that "[i]dentifying conflicts in *voir dire* may require such references as well." ([Filing No. 151 at 5](#).) The Court does not believe that it would be "highly prejudicial" to identify defense counsel as deputy attorneys general, as long as Sinn does not suggest or insinuate that the State will pay any judgment the jury awards him. Moreover, the Court routinely inquires during jury selection whether any prospective venire is familiar with the law firm or agency associated with all counsel. The Motion *in Limine* is **denied** as to issue 8.

In issue 13, Brush asks the Court to exclude "any argument, questions, testimony, or evidence suggesting spoliation of video footage from Putnamville Correctional Facility on April 24, 2014." ([Filing No. 146 at 14](#).) He argues there is no evidence that footage was destroyed in bad faith or that anyone failed to preserve footage. A suggestion of spoliation would create the inference that "the evidence, if produced, would have contained information adverse to the plaintiff's case." *Id.* at 15. Sinn opposes this request and asserts "[a] lack of video footage from certain cameras demonstrates how unsafe the prison was and the risk to Sinn and other inmates, since the conduct of gangs was not monitored sufficiently." The Court agrees with Brush. The fact that certain areas of the Putnamville Correctional Facility are not captured by footage offered in this case does not mean that footage does not exist, or that it never existed. Moreover, there is

no allegation that Brush or any IDOC employee improperly destroyed footage or failed to preserve footage, and it would be improper to insinuate to a jury that other footage existed that bolsters either party's version of the facts. The Motion *in Limine* is **granted** as to issue 13, Sinn may not suggest that any footage from Putnamville Correctional Facility on April 24, 2014 was destroyed or inadvertently lost by Brush or any other IDOC employee.

In issue 14, Brush asks the Court to "bar Sinn from making any reference to his subsequent placement in protective custody or the modification of his sentence to a community corrections program." ([Filing No. 146 at 16](Filing No. 146 at 16).) Sinn's placement in protective custody is a subsequent remedial measure, and evidence of that measure is prohibited by Federal Rule of Evidence 407. The Motion *in Limine* is **granted** as to issue 14, Sinn may not refer to the fact that IDOC officials moved him to protective custody after the attacks or that his sentence was modified.

Finally, in issue 15, Brush asks the Court to exclude "any argument, questions, testimony, or evidence regarding an incident at a bar in which a non-party allegedly passed around a video of the April 30th incident for entertainment purposes." ([Filing No. 146 at 17](Filing No. 146 at 17).) Brush argues this evidence is irrelevant. Sinn argues this evidence goes to the credibility of witnesses. But he does not say which witnesses' credibility would be impacted by the introduction of this evidence, or how. Sinn also argues the evidence shows the cavalier attitude of staff toward gang violence against prisoners and it "is extremely probative of Defendant's knowledge of the risk and deliberate indifference toward the safety of prisoners." ([Filing No. 151 at 7](Filing No. 151 at 7).) The Court disagrees. Brush's awareness of a risk to Sinn's safety is only relevant before the April 30, 2014 attack, when Brush could have potentially stepped in to prevent that attack. Any misuse of prison footage after that date is irrelevant to Brush's knowledge before April 30, 2014—the period relevant to this

case. Therefore, Brush's Motion *in Limine* is **granted** as to issue 15. As despicable as this misuse of footage was, assuming it did indeed occur, it is irrelevant to this lawsuit.

### III.  CONCLUSION

For the reasons stated above, the Court **GRANTED in part and DENIED in part** Sinn's Motion *in Limine* Regarding Criminal Record ([Filing No. 133](#)), and Brush's Motion *in Limine* ([Filing No. 145](#)). The Motions *in Limine* are **GRANTED** as to the following issues:

- Sinn's criminal record and incarcerations (other than the 2019 auto theft conviction),

- Sinn cannot claim that Brush was the cause of systemic issues at Putnamville Correctional Facility, and he cannot present evidence of dismissed and denied claims;

- other lawsuits involving John Brush, the Indiana Department of Correction, and/or the State of Indiana;

- settlement negotiations;

- indemnification of the Defendant;

- a "Golden Rule" argument;

- evidence of attorney's fees;

- the Seventh Circuit decision;

- evidence regarding diagnosis or causation other than subjective symptoms, unless offered through the testimony of a qualified expert;

- any suggestion of spoliation of video footage from the Putnamville Correctional Facility on April 24, 2014;

- Sinn's protective custody and sentence modification; and

- the video of the April 30, 2014 incident being passed around for entertainment by a correctional officer other than John Brush.

The Motions are **DENIED** as to the following issues:

- Sinn's 2019 auto theft conviction;

- evidence that gang and understaffing problems existed, and that Brush was aware of them;

- Brush's relevant employee disciplinary actions, if any; and

- the IDOC policies regarding gangs; defense lawyers' employment by the State of Indiana or Attorney General's Office.

An order *in limine* is not a final, appealable order. If the parties believe that evidence excluded by this Order becomes relevant or otherwise admissible during the course of the trial, counsel may approach the bench and request a hearing outside the presence of the jury. Likewise, if the parties believe that specific evidence that is allowed in this order becomes inadmissible during the course of the trial, counsel may raise specific objections to that evidence.

**SO ORDERED.**

Date: 9/26/2019

*[Signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Daniel LaPointe Kent
LAPOINTE LAW FIRM, P.C.
dkent@lapointelawfirm.com

Mary Jane Lapointe
LAPOINTE LAW FIRM PC
maryj@lapointelawfirm.com

Michael K. Sutherlin
MICHAEL K. SUTHERLIN & ASSOCIATES, PC
msutherlin@gmail.com

Joshua Robert Lowry
INDIANA ATTORNEY GENERAL'S OFFICE
joshua.lowry@atg.in.gov

Jonathan Paul Nagy
INDIANA ATTORNEY GENERAL'S OFFICE
jonathan.nagy@atg.in.gov

Caryn Nieman Szyper
INDIANA ATTORNEY GENERAL'S OFFICE
caryn.szyper@atg.in.gov